## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**LM INSURANCE CORP.**                                                    **PLAINTIFF**

**v.**                                              **CAUSE NO. 1:20-cv-311-LG-RPM**

**CIRCLE T, LTD.**
                                                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S
## MOTION TO BIFURCATE AND TO STAY PORTIONS OF COUNTERCLAIM

**BEFORE THE COURT** is the [29] Motion to Bifurcate and to Stay Portions

of Counterclaim filed by Plaintiff, LM Insurance Corporation d/b/a Liberty Mutual

Insurance ("LM").  Defendant, Circle T, Ltd. ("Circle T") filed a [33] Response in

Opposition, to which Plaintiff [40] replied.  After due consideration of the record, the

parties' submissions and applicable law, the Court finds that the Motion should be

denied.

### BACKGROUND

Plaintiff, LM Insurance Corporation, sues Defendant, Circle T, for allegedly

unpaid premiums owed under policies of workers' compensation insurance.

(Compl., ¶ 1, ECF No. 1).  Defendant is alleged to be a timber broker which

"employs subcontractors to harvest and transport timber to various timber mills."

(*Id.* ¶ 6).  Defendant, required by its clientele to purchase workers' compensation

coverage for these subcontractors, obtained the subject policies from Plaintiff

through the Mississippi Workers' Compensation Assigned Risk Plan, spanning

periods from 2017 through 2020.  (*Id.* ¶¶ 8-15).  Conducting an audit, Plaintiff

determined that "certain timber subcontractors in the course of [Defendant's] business . . . did not have workers' compensation insurance," thereby allegedly increasing the premiums due under the policy. (*Id.* ¶¶ 18-26). According to Plaintiff, Defendant "has refused to pay any of the . . . additional premium due as a result of uninsured subcontractors employed in its business for the policy periods in question." (*Id.* ¶ 26). After unsuccessful mediation, the parties resorted to litigation.

Plaintiff then filed the instant lawsuit in this Court on October 2, 2020, seeking a declaratory judgment that it is entitled to the unpaid premiums, damages in the amount of the unpaid premiums, and extracontractual damages. (*Id.* ¶¶ 27-33). After unsuccessfully moving to dismiss or stay this action, Defendant [13] answered the Complaint and counterclaimed, seeking a declaratory judgment in its favor as well as damages for Plaintiff's alleged breach of the duties of good faith and fair dealing and alleged abuse of process. In response, Plaintiff [15] answered the counterclaim and presented a [29] Motion to Bifurcate and to Stay, which has been fully briefed.

## DISCUSSION

Bifurcation is appropriate where convenient, economical, or necessary to avoid prejudice. *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.").

2

However, "the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (quoting *Swofford v. B. & W., Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)).

The Court must consider (1) whether the claims arise out of the same transaction or occurrence; (2) whether the posture of discovery as to the respective claims suggests that they should not be tried jointly; (3) whether the claims present common questions of fact or law; (4) whether the claims will require testimony of different witnesses and documentary proof; and (5) the prejudice to either party in the event separate trials are ordered. *Thompson v. Sanderson Farms, Inc.*, Civ. Nos. 3:04CV837BN, 3:04CV839BN, 3:04CV840BN, 2006 WL 2559852, at *4 (S.D. Miss. Sep. 1, 2006).

Here, Plaintiff has moved to bifurcate and stay a portion of Defendant's Counterclaim, specifically those claims of breach of the duty of good faith and fair dealing and abuse of process. Plaintiff argues that these "Extra-contractual Claims," whereby Defendant seeks noncontractual and punitive damages, wholly depend on the outcome of the parties' breach of contract claims. Hence, Plaintiff argues that "the Court grant its motion and enter an order (1) bifurcating Circle T's Extra-Contractual Claims and (2) staying all discovery and proceedings regarding those claims pending the Court's ruling on the DJ Claims." (Pl.'s Mem. Supp. Mot. Bifurcate, at 15, ECF No. 30). In so arguing, Plaintiff likens this case to more

3

typical insurance disputes in which bad faith claims are bifurcated pending resolution of coverage issues. *See, e.g., Stanford v. Liberty Mut. Grp., Inc.*, 2019 WL 4418532, at *3 (N.D. Miss. Sep. 16, 2019) (bifurcating "the bad faith and uninsured motorist claims into separate phases of the same trial").

But, as Defendant points out, there is no underlying claim or coverage dispute in this case. Rather, this case involves a plaintiff insurer's breach of contract claim against its insured for hundreds of thousands of dollars in additional premiums. (*See generally* Compl., ECF No. 1). Defendant's counterclaim seeks extracontractual damages for Plaintiff's alleged violation of the duty of good faith and fair dealing in its auditing, billing, collection and cancellation process and damages for abuse of process.[1] (Countercl., ¶¶ 8-10, ECF No. 13). Hence, Defendant's claim as to Plaintiff's alleged breach the duty of good faith and fair dealing is not a typical claim of "bad faith," which is indeed predicated on the court finding that a particular claim was covered by the policy. *See Stubbs v. Miss. Farm Bureau Cas. Ins. Co.*, 825 So. 2d 8, 13 (Miss. 2002) ("An insured seeking to recover on a claim of bad faith must first establish the existence of coverage on the underlying claim."); *Blue Diamond, Inc. v. Liberty Mut. Ins. Co.*, 21 F. Supp. 2d 631, 633 (S.D. Miss. 1998) ("The majority of Mississippi cases relating to instances of bad faith involve failure to pay a claim. . ."). Plaintiff's analogy to typical bad faith

---

[1] Defendant also resists the breach of contract claim and seeks a declaratory judgment in its favor that the additional premiums are not, in fact, owed. (*See* Countercl., ¶¶ 1-7, ECF No. 13).

4

claims can only be carried so far.

In response, Plaintiff argues that Defendant's extracontractual claims, despite differing from a typical "bad faith" action in which an insurer fails to pay a claim, still wholly depend on the Court finding in Defendant's favor on the contractual issue. A contractual "bad faith" claim "does not require a breach of any express provision of the contract," *Jones v. Miss. Inst. Higher Learning*, 264 So. 3d 9, 20 (Miss. Ct. App. 2018); but there can be no breach "when the party only took actions duly authorized by the contract." *Gulf Coast Hospice, LLC v. LHC Grp., Inc.*, 273 So. 3d 721, 745 (Miss. 2019). Defendant's "bad faith" claim rests on factual allegations surrounding Plaintiff's auditing, billing and collection processes. (*See* Countercl., ¶¶ 8-9 ECF No. 13). While the outcome of the main dispute may affect the viability of these claims, the Court cannot say that Defendant's "bad faith" claim entirely depends on the breach of contract claim as a matter of law. The jurisprudence has little to say on this subject.

In an analogous case, *Blue Diamond,* this Court considered a plaintiff's bad faith claim against its insurer for "present[ing] it with an 'improper and inflated premium' which it was unable to pay," cancelling the policy, and attempting to collect a "'fraudulent' premium amount." 21 F. Supp. 2d at 632. The insurer counterclaimed for the amount of the unpaid premiums. *Id.* at 638. In granting summary judgment to the insurer, the Court considered not only whether the insurer's calculation of premiums was "erroneous" or "fraudulent," but also whether

the insurer acted in bad faith in its auditing and billing practices. *See generally id.*
at 633-38. After finding that the insurer did not act in bad faith in its handling of
the auditing, billing, or cancellation process, the Court then entered summary
judgment in favor of the insurer on its counterclaim for the unpaid premiums. *Id.*
at 638. Hence, depending on the nature of the evidence, the Court cannot say that
Plaintiff must necessarily have acted in good faith during its audit, billing, and
collection practices if it finds that the additional premiums were owed under the
policy. However, a finding that the premiums were owed may ultimately affect the
viability of these allegations.

Therefore, the Court will not at this time bifurcate and stay all proceedings,
including discovery, on Defendant's extracontractual claims. The Court is not
convinced that "the issue to be tried [is] . . . so distinct and separate from the others
that" a bifurcation and stay of discovery is warranted. *See McDaniel*, 987 F.2d at
305. The issues appear to have some factual and legal overlap and will likely
involve similar proof and witness testimony.

**IT IS THEREFORE ORDERED AND ADJUDGED** that [29] Motion to
Bifurcate and to Stay Portions of Counterclaim filed by Plaintiff, LM Insurance
Corporation d/b/a Liberty Mutual Insurance, is hereby **DENIED**.

**SO ORDERED AND ADJUDGED** this the 4th day of October, 2021.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE